**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JEFFREY SCOTT KIRBY and KAREN CARDEN WALSH, Trustee in Bankruptcy,** | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **Case No. 07-CV-568-PJC** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

Pursuant to the parties' consent to proceed before the Magistrate Judge, the District Court reassigned this case to the undersigned on October 15, 2008. (Dkt. #29). A status conference was held on November 4, 2008 wherein the Scheduling Order was stricken pending the Court's determination of the Defendant United States of America's pending motions to dismiss and for summary judgment. (Dkt. #35). To assist the Court in ruling on the motions, the Court requested that Plaintiffs, Jeffrey Scott Kirby ("Kirby") and the bankruptcy trustee Karen Cardin Walsh (hereafter "Trustee") file "a short brief (no more than 5 pages) addressing what has occurred since the bankruptcy court proceeding was reopened; *e.g.*, whether the schedules have been amended to list the claim in this action, whether Kirby has filed for an exemption, whether the trustee has abandoned the claim, and any other matters that pertain to the issue of the real party in interest in this action." Plaintiffs filed their briefs on December 22, 2008 (Dkt. ## 39 and 40) and the government responded on December 29, 2008 (Dkt. #41). Defendant's Motion to Dismiss Certain Claims for Lack of Subject Matter Jurisdiction (Dkt. #10) and Motion for Summary Judgment (Dkt. #20), therefore, are now at issue.

## STANDARD OF REVIEW

First, the Court notes that the issue of subject matter jurisdiction in Defendant's motion to dismiss is reurged as one of the grounds for judgment in Defendant's motion for summary judgment. In both, Defendant contends that this Court lacks subject matter jurisdiction over Plaintiffs Kirby and the Trustee in Kirby's reopened Chapter 7 bankruptcy case. *In re Jeffrey Scott Kirby and Robyn Louise Kirby*, Case No. 06-10138-M (N.D.Okla.Bnkr.)(hereafter, the "bankruptcy case").

"[A] motion under Rule 12(b)(1) 'may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.'" *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1295 (10th Cir. 2002)(quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). In a facial challenge to the allegations concerning subject matter jurisdiction, the Court must take the allegations as true. *E.F.W. v. St. Stephen's Indian High School*, 264 F.3d 1297, 1303 (10th Cir. 2001). In a factual challenge to jurisdiction, the Court does not "'presume the truthfulness of the complaint's factual allegations,' but 'has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).'" *Id.* (quoting *Holt*, 46 F.3d at 1002-03). Unlike a Rule 12 (b)(6) motion, a Rule 12(b)(1) motion is considered a "speaking motion" and the inclusion of evidence extraneous to the complaint does not convert it to a Rule 56 motion. *Wheeler v. Hurdman*, 825 F.2d 257, 259 & n.5 (10th Cir. 1987). However, a Rule 12(b)(1) motion must be converted to a Rule 56 motion "when resolution of the jurisdictional question is intertwined with the merits of the case." *Holt*, 46 F.3d at 1003. "A jurisdictional question is considered intertwined with the merits of the case if the court's subject matter jurisdiction is

dependent upon the same statute that provides the substantive claim in the case." *Franklin Savings Corp. v. United States,* 970 F.Supp. 855, 860 (D.Kan.1997). That is the case here as the United States seeks dismissal of Plaintiffs' FTCA claim under 28 U.S.C. §§ 2401(b) and 2675(a) of the FTCA. The Court, therefore, considers the issue of subject matter jurisdiction pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Summary judgment pursuant to Rule 56 is appropriate where the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Windon Third Oil & Gas v. FDIC*, 805 F.2d 342 (10th Cir. 1986). In *Celotex*, the court stated:

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex*, 477 U.S. at 323.

To survive a motion for summary judgment, the respondent must establish that there is a genuine issue of material fact for trial. The disputed fact must be material to the claim and the dispute must be genuine. Respondent "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita v. Zenith*, 475 U.S. 574, 585 (1986). Evidence presented by the respondent is deemed to be true and all reasonable inferences are drawn in his favor. *Windon*, 805 F.2d at 346. The respondent "need only present evidence from which a jury might return a verdict in his favor."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "We view the evidence in a light most favorable to the nonmovant; however, it is not enough that the nonmovant's evidence be "merely colorable" or anything short of "significantly probative." *Committee for First Amendment v. Campbell*, 962 F.2d 1517, 1521 (10th Cir.1992).

**FACTUAL SUMMARY**[1]

On February 15, 2005, Kirby was admitted to the emergency room of the Claremore Indian Hospital ("CIH") complaining of chest and abdominal pain and nausea, and, although he was scheduled for gall bladder surgery on March 9, 2005, Kirby could no longer tolerate the pain. Attending physician, Dr. Samuel L. Horton, diagnosed Kirby with acute sigmoid diverticulitis. Kirby underwent a CT scan of the abdomen and was placed on IV fluids and pain medication for abdominal pain. The CT scan report identified the following: "Sigmoid diverticulitis but with focality of the inflammatory changes and wall thickening cannot exclude the possibility of neoplasm. Suggest colonoscopy for further evaluation."

After explaining the risks and benefits of surgery, Dr. Horton performed surgery on Kirby on February 22, 2005, resecting his entire left colon and part of the transverse

---

[1] The Court deems the *material* facts set forth in the government's statement of undisputed facts admitted for the purpose of summary judgment because Plaintiffs have failed to specifically controvert those facts as required by Rule 56 and Local Rule 56.1(c) which states:

> The response brief in opposition to a motion for summary judgment . . . shall begin with a section which contains a concise statement of material facts to which the party asserts genuine issues of fact exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the number of the movant's facts that is disputed. All material facts set forth in the statement of the material facts of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party.

LcvR.56.1(c). Those material facts are set forth below.

colon and removing his gall bladder (a left sigmoid colectomy and cholescystectomy). After the resection of the colon, Dr. Horton connected the two portions of the intestinal tract to each other (a primary anastomosis). Kirby's recovery was somewhat slow so he was not discharged until March 2, 2005.

However, the following day Kirby was admitted to the emergency room of Grove General Hospital complaining of a sudden onset of pain in the right lower quadrant of his abdomen. He was transferred to CIH and readmitted. A CT scan revealed a "small perforation from the right side of the colon" "thought to be from the anastomsis (sic)." Kirby was taken into surgery to repair the anastamosis and create a temporary colostomy. Pursuant to Kirby's request, Dr. Horton transferred Kirby to Hillcrest Medical Center on March 10, 2005 where he was treated by Dr. Jimmy Giddens who later took down Kirby's colostomy.

On June 22, 2005, Kirby hired attorney Ed Ash ("Ash") to investigate a potential medical malpractice claim against CIH. And on February 14, 2007, Ash, on behalf of Kirby, presented an administrative tort claim on a Standard Form 95 seeking $1 million in damages due to the "anastomotic leak of colon, peritonitis and sepsis, bilateral pneumonia, wound infection and respiratory infection," resulting from the alleged negligence of CIH. He also identified the following care as falling below acceptable medical standards:

(1) Failure to properly perform and monitor an anastomosis which resulted in a leak which cased sepsis, peritonitis, respiratory infection, bilateral pneumonia and the need fro an ileostomy;
(2) Failure to properly and timely treat the leak thus causing peritonitis and other problems;

(3) Prematurely releasing patient from hospital following the surgery; and
(4) Failure to timely examine the patient following discharge from the hospital.

The claim also stated that "[i]t was necessary for Mr. Kirby to file bankruptcy due to the medical bills incurred as a result of the anastomotic leak. (U.S. Bankruptcy Court, N.D. of Oklahoma #06-10138M)."

DHHS acknowledged receipt of this claim by letter dated February 20, 2007 and also requested additional documents and information, including "[a]ny other evidence or information which may have a bearing on [CIH] and/or the employee(s) involved for the injuries or the damages claimed." By letter dated April 13, 2007, Ash sent medical records dating from March 3, 2005 through January 24, 2007 and identified medical expenses totaling $205,107.81, many of which "were listed in a bankruptcy filed by Mr. Kirby. Enclosed is information about the Bankruptcy. I have been in contact with the trustee about this matter." And on July 2, 2007, Ash sent another letter to DHHS "[s]upplementing the earlier records and documents sent to your department" with the June 20, 2007 report of Dr. Louis Silverman which summed up CIH's negligence as follows:

> In summary, had colonoscopy as advised by radiologist been performed, the misdiagnosis of some diverticulitis would have been averted and colon resection and the subsequent complications been avoided. Had adequate bowel preparation and more appropriate choice of suture occurred, colon anastomotic failure may well have been prevented and the complications resulting from that failure prevented.

On February 18, 2006 (approximately a year before filing his administrative claim with DHHS), Kirby and his wife, Robyn Louise Kirby, filed for Chapter 7 bankruptcy and

on May 23, 2006, the U.S. Bankruptcy Court granted the debtors a discharge. A Final Report and Proposed distribution was filed on February 28, 2007 (approximately two weeks after the administrative claim was filed), but was withdrawn on March 9, 2007 "on the grounds that Trustee has recently been advised of an unscheduled asset which needs to be investigated."[2] On April 26, 2007, the Trustee applied to the bankruptcy court to retain Ash as counsel to represent the Trustee in pursuit of Kirby's medical malpractice claim against CIH. In support of the application, the Trustee attached Ash's affidavit which set forth in pertinent part the following:

> 5. Prior to the bankruptcy case being filed, I was contacted by Jeffrey Scott Kirby regarding a potential medical malpractice claim against the Claremore Indian Hospital. However, no claim was pursued at that time.
>
> 6. Only recently and after the bankruptcy case was filed, I advised Jeffrey Scott Kirby that he may or might have a claim against the Claremore Indian Hospital. I filed a federal tort claim on Mr. Kirby's behalf in February, 2007.
>
> * * * *
>
> 8. I was not aware that the Debtors had previously filed bankruptcy until February, 2007. As soon as I discovered the bankruptcy, I undertook efforts to notify the case Trustee.

The Trustee's application was approved on May 15, 2007 and she filed an Interim Report in the bankruptcy case on May 25, 2007 listing the malpractice claim against CIH for $100,000 as an unscheduled asset of the estate.

Upon having no response from DHHS regarding Kirby's administrative claim, Kirby and the Trustee filed their Federal Tort Claims Act ("FTCA") claim against the

---

[2] The Court takes judicial notice of the docket sheet and pertinent, available pleadings in the bankruptcy case. *Getty Petroleum Marketing, Inc. v. Capital Terminal Co.*, 391 F.3d 312, 322 (1st Cir. 2004) (distinguishing judicial notice of law from judicial notice of adjudicative facts).

government on October 5, 2007, alleging that Kirby received negligent medical care at CIH and identifying Walsh as the trustee in Kirby's bankruptcy case and thus having an "interest in this suit which is a possible asset in the Bankruptcy Estate." *Complaint* (Dkt. #2).

**THE FEDERAL TORT CLAIMS ACT**

As a sovereign, the United States "is immune from suit save as it consents to be sued and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941)(citations omitted). The United States has consented to suit under the provisions of the FTCA, 28 U.S.C. § 1346(b).[3] For this reason, compliance with the FTCA administrative notice and time requirements is jurisdictional and cannot be waived. *Lee v. United States*, 980 F.2d 1337, 1340 (10th Cir. 1992); *Nero v. Cherokee Nation of Oklahoma*, 892 F.2d 1457, 1463 (10th Cir. 1989).

The notice statute under the FTCA, 28 U.S.C. §2675(a), requires that claims for damages against the government be presented to the appropriate federal agency by submitting "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim. " *Cizek v. United*

---

[3] Section 1346(b) provides in pertinent part:
[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
28 U.S.C.A. § 1346(b)(1).

*States*, 953 F.2d 1232, 1233 (10th Cir. 1992); *Bradley v. United States*, 951 F.2d 268, 270 (10th Cir. 1991). "Because the FTCA constitutes a waiver of the government's sovereign immunity, the notice requirements established by the FTCA must be strictly construed." *Bradley*, 951 F.2d at 270. However, the "FTCA's notice requirements should not be interpreted inflexibly." *Estate of Trentadue ex rel. Aguilar v. United States,* 397 F.3d 840, 853 (10th Cir. 2005). The test under §2675(a) is "'an eminently pragmatic one: as long as the language of an administrative claim serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct and includes a specification of the damages sought, it fulfills the notice-of-claim requirement.'" *Id.* at 852-53 (quoting *Dynamic Image Technologies, Inc. v. United States*, 221 F.3d 34, 40 (1st Cir.2000)).

In addition, the FTCA requires that the claimant present his tort claim in writing to the appropriate federal agency for consideration within two years after the claim accrues. 28 U.S.C. §2401(b). Once submitted, the federal agency has six months to reach a final disposition on the claim. If the claim is denied, the claimant has six months thereafter to file suit in federal court. "If the federal agency fails 'to make a final disposition of [the] claim within six months,' the claimant may deem the agency's failure 'a final denial of the claim' and may proceed with his or her suit under the FTCA (again within the six-month period previously noted)." *Haceesa v. United States*, 309 F.3d 722, 733 (10th Cir. 2002); 28 U.S.C. § 2675(a). A FTCA claim is barred if presented to the federal agency more than two years of its accrual or if suit is not commenced within six months of its explicit or implicit denial by the federal agency. *McNeil v. United States*,

508 U.S. 106, 113 (1993).

## ANALYSIS

The United States contends that it is entitled to summary judgment that this Court lacks subject matter jurisdiction over Plaintiffs' FTCA claim based on the following: (1) Kirby lacks standing to assert the claim because the Trustee is the exclusive party in interest; (2) the Trustee has not exhausted her administrative remedies by filing an administrative claim; (3) the pre-operative claims of negligence are barred as untimely; and (4) the post-operative claims have been abandoned.[4] If, however, the Court finds it does have subject matter jurisdiction, Kirby is judicially estopped from bringing this claim.

### A. Real Party in Interest

The principle of the "real party in interest" is that an action "be brought in the name of the party who possesses the substantive right being asserted under the applicable law." 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §1541 at 321 (2d ed.1990); Fed.R.Civ.P. 17(a). The identity of the real party in interest is determined by the governing substantive law. The government contends that under the Bankruptcy Code, the Trustee and not Kirby is the real party in interest for the purpose of pursuing this negligence claim against the United States as the claim existed prior to the commencement of Kirby's bankruptcy case. Accordingly, the government states, Kirby should be dismissed.

---

[4] Based on the Court's finding of subject matter jurisdiction over this case, the Court need not reach this last issue.

In their supplemental briefs Kirby and the Trustee concede that the Trustee became the real party in interest after the filing of Kirby's bankruptcy case. (Dkt. ##39 and 40). They admit that Kirby had a medical negligence claim against the United States at the time he filed his Voluntary Petition for Relief under Chapter 7 on February 18, 2006; yet he failed to list the claim in Schedule B - Personal Property or claim an exemption in the claim in Schedule C - Assets Claimed Exempt. However, when Ash discovered that Kirby had filed bankruptcy, he notified the Trustee who sought leave from the Bankruptcy Court to employ Ash as special counsel to represent the Trustee in this matter. Leave was granted on May 15, 2007.

The Court agrees that the Trustee is the real party in interest in this action. A pre-petition cause of action belonging to the debtor at the commencement of a Chapter 7 bankruptcy case becomes the property of the estate immediately upon the filing of the bankruptcy petition. 11 U.S.C. §541(a)(1) (An estate over which the appointed trustee is given control "is comprised of ... all legal or equitable interests of the debtor in property as of the commencement of the case."); *In re Stat-Tech Intern. Corp.*, 47 F.3d 1054, 1057 (10th Cir. 1995) ("Property of the bankruptcy estate includes causes of action belonging to the debtor at the time the case is commenced."); *Abibo v. Sunset Mortgage Co., L.P.*, 154 P.3d 715, 718 (Okla.Ct.App. 2007) ("Causes of action that a debtor may have upon the filing of bankruptcy petition are clearly property of the bankruptcy estate."). "Once an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished unless the asset is abandoned back to the debtor pursuant to §554 of the Bankruptcy Code." *Parker v. Wendy's Intl. Inc.*, 365 F.3d 1268,

1272 (11th Cir. 2004). The asset can be abandoned (1) after notice and hearing if burdensome or of inconsequential value, 11 U.S.C. §554(a); (2) the bankruptcy court can order the asset to be abandoned upon request of a party in interest after notice and hearing, 11 U.S.C. §554(b); or (3) scheduled property "not otherwise administered at the time of the closing of a case is abandoned to the debtor," 11 U.S.C. §554(c). None of these means of abandonment exists here. Rather, because "[f]ailure to list an interest on a bankruptcy schedule leaves that interest in the bankruptcy estate," Kirby's failure to include his negligence claim in his bankruptcy schedules confirms that the claim remains in the bankruptcy estate. *Parker*, 365 F.3d at 1272. Accordingly, the Trustee as the estate's representative is the real party in interest with exclusive standing to assert the negligence claim in this action. *Id.* ("Generally speaking, a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it."); *Abibo*, 154 P.3d at 718 ("In the case of lawsuits or claims, the trustee, not the debtor, becomes vested as the real party in interest, with the debtor losing standing to prosecute or defend."); *Matter of Educators Group Health Trust*, 25 F.3d 1281, 1284 (5th Cir.1994) ("If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim."); *Bauer v. Commerce Union Bank, Clarksville, Tennessee*, 859 F.2d 438, 441 (6th Cir.1988), *cert. denied* 489 U.S. 1079 (1989) ("The debtor has no standing to pursue such causes of action."); *Ardese v. DCT, Inc.* 2006 WL 3757916 at *4 (E.D.Okla. Dec. 19, 2006) (rejecting debtor's argument that she had standing to pursue her Title VII claim because there was a possibility of recovering an award or settlement in surplus of the estate's debts, expenses and fees and allowing the

bankruptcy trustee as real party in interest to substitute for debtor as plaintiff). Kirby, therefore, is hereby dismissed, leaving the Trustee as the sole plaintiff in this action.

**B. Jurisdiction under the FTCA**

The United States contends that the administrative claim submitted to DHHS does not meet the jurisdictional requirements set forth in 28 U.S.C. §2675(a). First, the claim submitted is in Kirby's name, not the Trustee's, and the Trustee has not filed an administrative claim. Second, the claims of pre-operative negligence are not included in the administrative claim and to the extent Kirby intended to amend the administrative claim with Dr. Silverman's report, the amendment is untimely.

The government's restrictive view of the notice requirements under the FTCA, however, does not comport with the purpose of the administrative claim requirement, the Tenth Circuit test under §2675(a), or its corresponding regulation, 28 C.F.R. §14.2(a). "The purpose of the administrative claim requirement is to ease congestion of the courts and avoid unnecessary litigation, to afford the government an opportunity to investigate and expedite the fair administrative settlement of tort claims. The administrative claim procedure is *not* intended to make recovery from the government technically more difficult." *Focke v. United States,* 597 F.Supp. 1325, 1349 (D.Kan.1982)(citation omitted); *Staggs v. United States,* 425 F.3d 881, 885 (10th Cir. 2005) (The FTCA's underlying purpose is to "'ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States.'"); *Bradley*, 951 F.2d at 271 n. 3 (same).

Further, the test under §2675 adopted by the Tenth Circuit in *Trentadue* is

> "an eminently pragmatic one: as long as the language of an administrative claim serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct and includes a specification of the damages sought, it fulfills the notice-of-claim requirement." [*Dynamic Image Technologies, Inc. v. United States*], 221 F.3d 34, 40 (1st Cir.2000). Several courts in this jurisdiction have similarly interpreted the provision to require notice of the facts and circumstances underlying a claim rather than the exact grounds upon which plaintiff seeks to hold the government liable. *See Barnson v. United States,* 531 F.Supp. 614, 623 (D.Utah 1982) ("[A] claim is sufficient which notifies the agency of the facts of the incident and need not elaborate all possible causes of action or theories of liability."); *see also Mellor v. United States*, 484 F.Supp. 641, 642 (D.Utah 1978) ("The purpose of the administrative claim procedure is to allow the agency to expedite the claims procedure and avoid unnecessary litigation by providing a relatively informal nonjudicial resolution of the claim."). We agree that the FTCA's notice requirements should not be interpreted inflexibly.

*Trentadue*, 397 F.3d at 852 -853. This pragmatic test is mirrored in the implementing regulation which states that "a claim shall be deemed to have been presented when a Federal agency receives . . . written notification of an *incident* . . . ." *Focke*, 597 F.Supp. at 1350 (quoting 28 C.F.R. §14.2(a)). The emphasis is not on the level of detail but on the notification that an accident has occurred so that the agency can "conduct a full investigation of the incident." *Id.*

The Court turns first to the issue of different claimants. When there are multiple claimants, "'each claimant must individually satisfy the jurisdictional prerequisite of filing a proper claim." *Haceesa*, 309 F.3d at 734. However, it makes little sense to view the Trustee and Kirby as separate claimants because the Trustee "stands in the shoes" of Kirby by operation of bankruptcy law and thus her claim is identical to and coextensive with his.[5] *Bank of Marin v.*

---

[5] The government cites *Shelton v. United States*, 615 F.2d 713 (6th Cir. 1980) in support of its argument that an administrative claim by one party in interest (the insurer) does not satisfy the exhaustion requirement to allow the other party interest (the insured) to file a FTCA claim in federal court. In so finding, the Sixth Circuit focused on the requirement of a "sum certain" in the administrative claim noting that the partially subrogated claim of the insurer for the amount paid its insured for lost

*England*, 385 U.S. 99, 101 (1966) ("The trustee succeeds only to such rights as the bankrupt possessed; and the trustee is subject to all claims and defenses which might have been asserted against the bankrupt but for the filing of the petition."); *Cf. Penn Millers Ins. Co. v. United States*, 472 F.Supp.2d 705, 712 (E.D.N.C. 2007) (explaining that the insurer and insured may file separate administrative claims because they "may have different losses"). More importantly, the Court finds that the administrative claim put DHHS on constructive notice that the bankruptcy trustee was likely the real party in interest to pursue the claim as the claim noted that "[i]t was necessary for Mr. Kirby to file bankruptcy due to the medical bills incurred as a result of the anastomotic leak" and, in response to the DHHS' request for other information 'which may have a bearing on [CIH] and/or the employee(s) involved for the injuries or the damages claimed," Ash identified medical expenses which "were listed" in Kirby's bankruptcy and informed DHHS that Ash "had been in contact with the trustee about this matter."

The United States also contends that the administrative claim fails to meet the presentment requirements under §2675(a). In support of its argument, the United States parses

---

wages does not provide adequate notice of the amount of the insured's claim for pain and suffering, medical bills and injury to property in addition to loss of wages.

> [The FTCA policy of promoting expeditious settlement of tort claims] is best served by ensuring a federal agency timely notice of the probable scope of a claim against it. It is the injured party's claim, not the insurer's subrogated interest, which determines the outer limit of an agency's possible liability. To require an agency to begin settlement negotiations on the basis of information limited to the insured's loss with no indication of the extent of the uninsured's damages would be inconsistent with the statutory goal of prompt, efficient agency action. We agree with the district court that the policies underlying the Act would be frustrated if we adopted appellant's view of this matter.

*Id.* at 716. The United States contends that *Shelton* thus supports the exclusion of the present claim because the Trustee has valued the claim in her Interim Report at $100,000 while Kirby's "sum certain" set forth in his claim is $1 million. To the contrary, the Trustee's claim *is* Kirby's claim and the valuation of the amount owed creditors does not in any way limit the damages in this lawsuit. Further, the $1 million sought in Kirby's administrative claim is "the outer limit of [DHHS'] possible liability." *Id.*

the administrative claim into pre-operative, operative and post-operative negligence (malpractice) and argues that the claim submitted by Kirby restricts CIH's negligence to operative and post-operative events. Further, the government argues that Dr. Silverman's findings of CIH's pre-operative negligence in the diagnosis of diverticulitis as well as in CIH's plan and preparation for Kirby's surgery do not "amend" the administrative claim as pre-operative negligence is a separate theory of negligence and was submitted to DHHS on July 2, 2007, more than two years after Kirby's pre-operative negligence claim accrued (February 2005) and three months shy of the required six months before filing this action on October 5, 2007. *See* 28 U.S.C. §2401(b).[6] The government in essence constructs the "administrative claim" from its jurisdictional defenses rather than from a determination of whether the claim gives "notice of the underlying facts and circumstances . . .upon which [the claimant] seeks to hold the government liable." *Staggs*, 425 F.3d at 884. The Court finds that the administrative claim (without Dr. Silverman's report) provides adequate notice of CIH's negligence, including the government's alleged "pre-operative" negligent acts or omissions. As Judge Posner observed, since Standard Form 95 used for administrative claims does not require a statement of legal theories, "only facts plus a demand for money, the claim encompasses any cause of action fairly implicit in the facts." *Murrey v. United States*, 73 F.3d 1448, 1452 (6th Cir. 1996). In other words, "[a]n administrative agency is

---

Section 2401(b) provides:
A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.
28 U.S.C.A. § 2401(b).

deemed to be on notice not only of the theories of recovery stated in the claim, but of the theories of recovery that its reasonable investigation of the specific allegations of the claim should reveal." *Burchfield v. United States*, 168 F.3d 1252, 1255 (11th Cir. 1999).

For example, in applying its "pragmatic" test for determining whether the plaintiffs therein had sufficiently described a claim to satisfy the presentment requirements of §2675(a), the *Trentadue* court rejected the government's position that the plaintiffs' administrative claim was "based on a theory that prison officials had murdered [prisoner] Trentadue and did not discuss the specific grounds relied on by the district court in awarding damages, namely, the government's treatment of the Trentadue family in the aftermath of his death and its actions in conducting an autopsy after claiming that no autopsy would be performed without prior approval." *Trentadue*, 397 F.3d at 852. Rather, the Tenth Circuit characterized the claim generally as providing notice "that DOJ should investigate the prison officials' conduct":

> Plaintiffs' complaint sought damages based on the government's "extreme acts of misconduct," including the mutilation of Trentadue's body, the assertion that Trentadue's family caused his injuries, and the statement that Trentadue killed himself because he had AIDS. The complaint further stated that "[t]hese and other acts ... were so extreme as to exceed all bounds of what is tolerated in a civilized community." This language gave DOJ notice of the facts and circumstances surrounding plaintiffs' emotional distress claim and, moreover, is consistent with plaintiffs' subsequent allegations in their amended complaint.

*Id. at 853*

The *Trentadue* court cited *Barnson v. United States*, 531 F.Supp. 614 (D.Utah 1982) and *Mellor v. United States*, 484 F.Supp. 641 (D.Utah 1978) as cases within its jurisdiction which correctly required "notice of the facts and circumstances underlying a claim rather than the exact grounds upon which plaintiff seeks to hold the government liable." *Trentadue*, 397 F.3d at 853.

In *Barnson*, the administrative claim alleged that plaintiffs were injured as a result of "unventilated or poorly ventilated [uranium] mines," the Atomic Energy Commission's ("AEC") negligent failure to warn of those dangers and to "implement rules, regulations and standards governing uranium mining prepared by its own experts responsible for industrial safety which said regulations and standards would have protected claimant from injury or death from excessive radiation exposures." *Barnson*, 581 F.Supp. at 623. The *Barnson* court found that "[t]he description clearly addresses the possibility that [medical personnel] from other agencies might be implicated." *Id.*

> The facts and legal theories of this case are very complex. This is not simply a case of failure to notify an agency of a separate negligent act occurring at a completely different time. Nor is this situation one in which the medical causes of action are "obviously distinct and different" from the other causes of action alleged, for which a proper claim was submitted. The claims here allege a wide pattern of negligence in notifying plaintiffs' decedents of the dangers to which they were subjected. The AEC's activities at least primarily, and perhaps exclusively, gave rise to these claims.

*Id.* at 624 (citations omitted).

In *Mellor*, the plaintiff stated in his administrative claim that he "was negligently placed on Kamamycin" and that he had received "(n)egligent care and treatment by medical and hospital personnel resulting in damage to (plaintiff)." *Mellor*, 484 F.Supp. at 642. The district court concluded that the claim gave the government notice of a claim for failure to obtain the plaintiff's informed consent:

> Plaintiff has put defendant on notice of the "incident" out of which this action arises, has informed defendant of the "facts and circumstances" underlying the claim and has presented a "claim" for a sum certain to the appropriate federal agency. This is all that is required by the applicable law.
>
> * * * *
>
> Here, this action is, and the administrative claim was, based upon a single

> incident; that is, the alleged injury and resulting damages stem from the same set of negligent acts and the same time period.

*Id.* at 642, 643.

Based on the facts in *Trentadue, Barnson* and *Mellor*, to say that Kirby's administrative claim seeking damages for the "[a]nastomotic leak of colon, peritonitis and sepsis, bilateral pneumonia, wound infection and respiratory infection" he suffered as a result of his surgery, would not put DHHS on notice to investigate the diagnostic tests which triggered the plan for and preparations for that surgery would twist the *Trentadue* test beyond any pragmatic recognition. If DHHS were on notice that the alleged negligent operative and post-operative events harmed Kirby, then certainly it was on notice to investigate whether the surgery negligently performed was necessary and whether CIH failed to effectively prepare the bowel for that surgery. This action, as well as Kirby's administrative claim is based upon a single incident, his colon surgery, and Kirby's alleged injuries and damages resulted from the same set of negligent acts and omissions in the same time period.[7] *Mellor*, 484 F.Supp.at 643.

**C. Judicial Estoppel**

Finally, the United States asserts that it is entitled to summary judgment based on judicial estoppel. The doctrine of judicial estoppel is based upon protecting the integrity of the judicial system by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S.742, 749-50 (2001). Although there is no precise formulation, courts typically look at the following factors in determining whether to

---

[7] Rather than a separate claim that could effect an amendment to the claim, Dr. Silverman's report is simply additional "evidence or information which may have a bearing on [CIH] and/or the employee(s) involved for the injuries or the damages claimed" in Kirby's Standard Form 95.

apply the doctrine:

> 1) a party's later position is clearly inconsistent with its earlier position; 2) a party has persuaded a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or second court was misled"; and 3) the party seeking to assert the inconsistent position would derive an unfair advantage if not estopped.

*Bradford v. Wiggins*, 516 F.3d 1189, 1194 (10th Cir. 2008)(citing *New Hampshire*, 532 U.S. at 750). However, the Tenth Circuit cautions that "'[b]ecause of the harsh results attendant with precluding a party from asserting a position that would normally be available to the party, judicial estoppel must be applied with caution.'" *Id.* (quoting *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir.1996)).

The Tenth Circuit applied this doctrine in the context of bankruptcy proceedings when it found that a Chapter 7 debtor swept "his personal injury action 'under the rug' so he could obtain a discharge free and clear of his creditors." *Eastman v. Union Pacific R. Co.*, 493 F.3d 1151, 1159 (10th Cir. 2007). And now, the United States argues that it is applicable here as Kirby failed to list his negligence claim against CIH in his bankruptcy schedule as required when he filed for Chapter 7 bankruptcy on February 18, 2006, although he had retained Ash to pursue his malpractice claim on June 22, 2005.

Whether Kirby should be judicially estopped from any recovery on his malpractice claim is not a determination for this Court as he is no longer a party in this lawsuit. The Trustee is the only remaining plaintiff and she has not taken any inconsistent position with respect to the malpractice claim or misled the bankruptcy court about the existence of the claim. *Eastman*, 493 F.3d at 115 n.3; *In re Riazuddin*, 363 B.R. 177, 187-88 (10th Cir. BAP 2007)(Finding no basis

to apply the doctrine to the bankruptcy trustee as "[s]he never took an inconsistent position with respect to the personal injury claim, she never knowingly participated in any attempt to persuade the court to adopt the Debtors' position, and she is not responsible for any perception that the bankruptcy court was misled."); *Paup v. Gear Products, Inc.*, 2007 WL 2874829 (N.D.Okla); *Malloy v. Reed*, 2006 WL 2320594 at *7 (N.D.Okla.)("The Court finds no reason to apply judicial estoppel against the Trustee, because he clearly has standing to litigate the case and he did not make any statement that could have misled the bankruptcy court."). As the Seventh Circuit has recognized:

> Judicial estoppel is an equitable doctrine, and it is not equitable to employ it to injure creditors who are themselves victims of the debtor's deceit. Moreover, as a technical matter the estate in bankruptcy, not the debtor, owns all pre-bankruptcy claims, and unless the estate itself engages in contradictory litigation tactics the elements of judicial estoppel are not satisfied.

*Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006).

Accordingly, the Court concludes the doctrine of judicial estoppel is inapplicable here. Should the trustee succeed in recovering damages in excess of the amount owed Kirby's creditors, plus fees and expenses, the bankruptcy court can, if it chooses, "assess any penalties it deems appropriate for [Kirby's] failure to inform the court of the medical malpractice claim." *In re Kreutzer*, 249 Fed. Appx. 727, 730 (10th Cir. 2007).

## CONCLUSION

For the reasons set forth above, the Court **DISMISSES** Plaintiff Jeffrey Scott Kirby and otherwise **DENIES** Defendant's Motion to Dismiss Certain Claims for Lack of Subject Matter Jurisdiction (Dkt. #10) and Motion for Summary Judgment (Dkt. #20). The Court sets a teleconference with the parties on **Wednesday, February 11 at 2:00 P.M.** to discuss the trial

schedule.

IT IS SO ORDERED, this 6th day of February, 2009.

UNITED STATES MAGISTRATE JUDGE